Johnson, J.
There can be no question that a knowledge of the-boundary and the quantity of woodland, particularly if on that account it was more valuable, was necessary to enable the de-. fendant to judge of the propriety of purchasing, and of the reasonableness of the price demanded; and it. is equally clear that if he has been deceived in these particulars by the representations of the plaintiff, the injury to him is precisely the same, whether they were made falsely and fraudulently,. *660 and with intent to deceive, or by mistake and in the belief that they were true. If they had been wilfully false, the principle on which the instructions to the jury proceeds, concedes that the defence ought to have prevailed, but that is expressly no-gatived by the case stated, and it follows necessarily that they must have been made by mistake, and that when plaintiff con-voved to defendant, he supposed he was describing the land as he had represented it. The manner in which the mistake arose, is not stated in the report, and for the purpose of testing the question, we may suppose that the plaintiff derived his knowledge of the boundary and quantity of woodland from some one who might be supposed to know, or that it had resulted from some error in some previous survey by a regular surveyor, or- from any other cause calculated to deceive the plaintiff — and hence the question now to be considered.
The confidence and zeal manifested by the counsel in the prosecution and defence of the appeal, has induced me to take more time, arid bestow upon the case more than ordinary consideration ; and the x’esult of my reflections are, that the whole difficulty has originated in a mistake as to the true grounds of the controversy, for I don’t believe that where the case is clearly understood, there will be found even a dictum, in any book of authority, opposed to the defendant’s right to the relief which he seeks in some form or other, if, as the case supposes, he was influenced to make the purchase by the misrepresentations of the plaintiff although made by mistake.
Relief against mistakes in fact, is a well known branch of Equity jurisdiction,, and where the contract has been fully executed, I incline to think that relief could only be obtained in Chancery. But with regard to contracts merely executory, there is no doubt that it is a legitimate common law jurisdiction, for where the mistake is susceptible of the common law mode of proof, even that Court would not lend its aid to carry the contract into effect, without requiring the plaintiff to repair the wrong to defendant; and if any one principle can be regarded as definitely settled by the decisions of one of our Courts, it is, that in actions on contracts, the defendant at law may in his defence avail himself of the misrepresentations of the plaintiff in relation to the consideration of the contract, whether they were made through fraud or mistake.
The first case in the order of time which has been preserved, is Gray v. Handkinson, 1 Bay, 278, which occured.in 1792. That was debt on a bond, and the defence was that it was given for a tract of land which was represented to contain a mill seat, and was valuable principally on that account, as the tract was principally pine land. Shortly after the purchase, it, was discovered that the mill seat, and a considerable quanti *661 ty of timbered land adjoining, was covered oy an older survey, by which means the great object of the purchase was defeated. This was a case on the Circuit, but tried at a time when three judges presided, and the Court consisting of Rutledge, Ch. J. and Burke and Bay, Justices, instructed the jury that this was a “ kind of equitable defence which formerly belonged to the Chancery jurisdiction ; but that the Courts of law had lately let the parties into it in a Court of common law as well as in a Court of Equity, on the ground of fraud ; that this fraud might arise cither from the intent and design of one party to impose on the other, or from circumstances which neither party knew of, or could foresee at the time of the contract, but that from whatever cause it arose, it was a proper subject for the investigation of this Court, wherever it could be traced out, and came as well within the province of the jury, as before any tribunaland under these instructions the jury found a general verdict for the defendant; and the Reporter adds in a noto, that even then a great number of causes had been determined on that principle.
The case of the State v. Gilliard, which followed in 1796, was heard by a full bench of judges on appeal, and seems to have received full consideration, and to have been decided on principle. There the defendant had purchased a tract of land at a public sale made by the commissioners of confiscated estates, and at the time of the sale, a plat with explanatory notes was produced, exhibiting a stream of water running through it, whereon was a fine mill seat, which was the principal inducement to the purchase, and which upon examination, turned out to be a dry gully for three fourths of the year; and it was held that this was a sufficient ground for the entire recision of the contract. It is not stated in the report by whom, or by whose authority, or on what occasion the plat was made ; but from the nature of the case it cannot be supposed that it was made by, or under the instructions of the commissioners, for they were the mere agents of the State to make the sale, and had no interest, and therefore no possible motive to misrepresent the true condition of the land. Burke, J. who delivered the opinion of the whole Court, in giving-judgement for the defendant, put the case on the civil law-principle, that a sound price deserves a sound commodity, and 'that when there is a failure of consideration, or misrepresentation, or concealment of material circumstances, it vitiates the contract in ¿oía, or entitles the party injured to such an abatement in the price of the thing sold or demanded, as would make him full reparation for the injury sustained; and he maintains that the incorporation of this rule of the civil law into our jurisprudence,, is warranted by our discount law. *662 which, he supposes, was framed with reference to it, and by which, in all actions for the recovery of debts, the defendant is authorized to give in evidence, by way of discount, “any. account, reckoning, demand, cause, matter or thing, which he may have against the plaintiff,” Pub. Laws, 246 ; and in this respect, conferring on the law Courts an equitable jurisdiction.
In Adams ads. Wylie, 1 N. & M’C., 78, which was debt on bond, the defence was, that it was given for a tract of land which was represented at the sale as containing 294 acres of high land, besides a body of marsh ; whereas it only contained 202 acres of high land. The evidence in support of the defence was rejected by the Circuit Court, on the ground that the deed was the only admissible evidence to show what the contract was. It does not appear from the report whether this misrepresentation was wilful or not, but in ordering a new trial to let in the evidence, Judge Coicock, who delivered the opinion of the Court, puts it directly upon the authority of Gray v. Handkinson, which he remarks, had never been disputed.
In Tunno v. Fludd, 1 M’Cord, 122, the circumstances show very clearly that the misrepresentation of the quantity of land sold, was not wilful on the part of the persons interested, for it originated in the error of a survey made under the order of the Court, for the purpose of a sale for partition, by which the land was represented to contain 87 acres more than it really did. The jury allowed the defendant an abatement in the price, proportioned to this deficiency, and in refusing a new trial on that ground, the Court refer to the cases of Gray v. Handkinson, The State v. Gilliard, and Adams v. Wylie, as having settled the principle.
Thus, the law very clearly is, and it would seem unnecessary to multiply authorities on the point; but there are two cases which occurred in the Court of Chancery, in 1817, so directly analagous to this in point of principle, that I cannot forbear to mention them; and although they are not reported, they were decided on full hearing in the Court of Appeals in Equity. One of these was the case of Caldwell v. Briggs, where, on a bill for the specific performance of an agreement for the sale of a tract of land, the defendant, the purchaser, was allowed an abatement in the price, because the-complainant, the seller, had, in the negotiation for the sale, misrepresented the quantity of timbered land contained in a certain section, although it was admitted that the misrepresentation was not wilful. The other case alluded to, is the case of Macon v. Waties. That was a bill to foreclose a mortgage given as the price of a tract of land, and the defence set up, was, that while examining the land with a view to the sale, the defendant inquired of the seller what number of acres were contained in a certain body *663 of woodland, which was a leading object in the purchase, who, after making some calculations, answered that he supposed there were two hundred acres, but that he had made no survey of it; and that the whole quantity of high land amounted to 600 acres. There turned out to be a considerable deficiency in the quantity of woodland, and although the defendant distinctly admitted in his answer, that there was no intention on the part of the seller to deceive, and that he really believed there were two hundred acres of the woodland, yet it was held that the defendant was entitled to an abatement in the price, on account of the deficiency.
The fact that the misrepresentations on the part of the plaintiff were not wilful, and therefore no actual fraud, being conceded, the arguments opposed to the motion are founded upon the assumption that the evidence was inadmissible and irrelevant, either according to the principles of the common law, or the peculiar adjudications of our own Courts, because it is calculated to vary the terms of the conveyance — the written contract between the parties.
The cases before referred to are in themselves a sufficient answer to these objections, so far as relates to the peculiar decisions of our own Courts. In most of these, evidence of misrepresentations confessedly by mistake, was admitted and held to‘be available. And here it will perhaps be well to notice a distinction taken by the counsel, between misrepresentations made by means of plats and other documents, and those resting entirely on parol, in which it is insisted, that although the former may be admissible, the latter must be excluded. In The State v. Gaillard, and in Tunno v. Fludd, the mistakes originated in plats exhibited at the time of the sale; but in Adams ads. Wylie, Caldwell v. Briggs, and Macon v. Waties, proof of the mistakes was made exclusively by parol; nor is there in principle any foundation for the distinction. From the nature of the thing, written evidence of a mistake can be very rarely attained, and without parol was admissible, rules affording relief against them would be useless.
It would be an endless labour to go through and analyze all the cases which the learned counsel have cited, in support of the position that the evidence was inadmissible according to the rules of the common law, and I shall content myself by referring to those only which have been most relied on, and strike me as most prominent; premising, however, that on a critical examination of the whole, it will be found that where evidence of a mistake, as distinguished from fraud, has been excluded, it has been on account of the form of' the action, or the want of jurisdiction ; and that for the most part, they consist of cases where the evidence has been excluded on the *664 gl’ound it tended to vary or alter the terms of the written contract, and not a mistake.
The case of Howes v. Barker, 3 Johns. Rep. 498, belongs t0 ^18 fu’st; °f these classes. That was an action of assumpsit, in which it appeared that the defendant had, by an agreement, covenanted to sell to the plaintiff a tract of land, at £9 per acre ; and a deed was accordingly executed, and the money paid, according to the quantity expressed in the deed. It turned out afterwards, that the quantity of land expressed in the deed was greater than the tract actually contained; but it was held that the excess could not be recovered in that form of action, and evidence that the quantity of land inserted in the deed was by mistake, was excluded; but then the contract had been executed, and Kent Oh. J. who, I think, puts the case on its true ground, says, that sitting in a Court of law, he was bound to consider the deed as the highest evidence of contract between the parties ; but that if there was a mistake, the plaintiff must resort to a Court of Equity, which had long had jurisdiction.of all such cases, and where parol evidence is hold to be admissible to correct the mistake. If, therefore, I am right in supposing that the Courts of law have concurrent jurisdiction with the Courts of Chancery, in cases of mistake, where the aid of the Court is necessary to carry it into effect, or if the authority of The State v. Gaillard, and the subsequent decisions founded on it, are binding on the Court, this case is direct authority on the positions which I have before maintained.
The general rule very clearly is, that parol evidence will not be admitted to vary the terms of a written agreement, and many of the cases cited by the counsel illustrate the rule : thus in Schemerhorn v. Vanderheyden, 1 Johns. Rep. 139, where it was held that parol was inadmissible to show that the' •consideration was different from that expressed in the written contract; so in Mumford v. M’Pherson, 1 Johns. Rep. 413, where in an action on a warranty on the sale of a ship, the plaintiff would have given in evidence that the defendant represented the ship as being copper fastened; but it was rejected, because the bill of sale contained no such warranty. And so in Read v. Duncan, 2 M’Cord, 167, where it was held that the plaintiff could not, in an action to recover back the price paid for a negro alledged to have proved unsound, give in evidence the representations of the defendant, the seller, made in the treaty for the sale, as to the soundness of the negro ; but in this case the bill of sale contained an express negative of all warranties, except as to the right of property m the negro.
*665 These cases, ami many others of the same character, which were cited in the argument, all proceed on the ground that the written contracts describe the thing contracted about as the parties understood it, and contained all the covenants which they finally stipulated for ; so that there could have been no mistake, and, therefore, the written contract was conclusive. Not so here. The land sold had been shewn by the plaintiff to the defendant, and the case stated supposes that when it was described in the conveyance, both the parties thought that the description corresponded with the boundaries shewn in the negotiation for the sale. The defendant certainly thought so, and so did the plaintiff, or he was guilty of fraud, and in either^ case the defendant in entitled to relief.
A case put by one of the counsel is well calculated to illustrate the principle. One owning two lots in a town, one highly improved and therefore of great value, the other unimproved and therefore of little value, and enters into a contract for the sale of that which is unimproved, at a price corresponding with its value, but by mistake makes a conveyance of the improved lot. Is there no relief, and is parol evidence of the intention of the parties to be excluded, and the deed suffered to take effect 1 If this be so, the boast that the law supplies ft remedy for every wrong, is idle and deceitful.
The principle on which the party injured is entitled to be relieved, was borrowed, as is said in The State v. Gaillard, from the civil law; but it is a mistake to suppose that it was then for the first time incorporated into our jurisprudence. It had been long before acted upon by the Courts of Chancery, both in this country and in England, and it-might perhaps have been well to have confided relief to that Court alone; but with regard to contracts that are merely executory, I have not found any insurmountable difficulty in giving it effect in the law Courts ; and from long usage, it has become so interwoven with the common law jurisdiction, that it would be difficult now to separate it without doing violence to the whole system,
I am aware that the principle is liable to abuse in its application, but that is not a sufficient reason for discarding altogether a principle which appears to me so necessary to the administration of justice. Great care should be taken that in its application it should be confined to its legitimate objects, and that trivial circumstances should not be allowed to set aside or derange written contracts which have been solemnly entered into between the parties ; and somo useful hints have been thrown out in Frazier v. Harvey, 2 Bail. 270. For example, when the misrepresentation complained of, is as to the quality of lands sold, or the quantity when it has not been ascertained by admeasurement or some other certain rule, or the relative *666 quantities of the different description of highland and swamp, and other matters founded merely on opinion ; for a purchaser is not liable to be imposed on by the opinions of the seller, and if he is, when he has the same means of forming an opinion for himself, it is his own folly, from which he cannot and ought not to be relieved. It ought to appear, also, that the manner of the misrepresentations was calculated to influence the party in concluding the contract, and that he acted upon them without examining for himself and exercising his own judgement. Proof of the misrepresentation or mistake ought to be full, clear and explicit. The indiscriminate application of the principle, without the most satisfactory evidence, would have a tendency to set afloat and derange all contracts.
In illustration of my views in the application of these rules, I would refer to the cases of Caldwell v. Briggs, and Macon v. Waties; for notwithstanding they shew most unequivocally the existence of the rule as applied in our own Courts, I am not satisfied from the facts stated in the report, that either of them were brought within my notion of its true application. In the first, it is not stated how Caldwell happened to be mistaken in his estimate of the quantity of woodland, nor whether Briggs acted upon the faith of them when concluding the bargain ; and it strikes me that the estimate of the quantity of woodland in the latter was rather conjectural than otherwise ; and if this be true, I should think it insufficient. But it is not improbable that other circumstances entered into these cases, and that they were correctly decided, and they are now only referred to by way of example.
The question here turns on the instructions to the jury, and these being erroneous, the case must go back for a new trial; and on a second trial, the jury, under these directions, will make a proper application of the principle.
Motion granted.
O’Neall and Harper, Js. concurred.